UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------X

FODAY SILLAH
aka MAMADU KAMARA,

                    Petitioner,

    - against -

UNITED STATES OF AMERICA

                    Respondent.

------------------------------------------------------X

**OPINION AND ORDER**

**13 Civ. 4955  (SAS)**

**10 CR 1303 (SAS)**

**SHIRA A. SCHEINDLIN, U.S.D.J.:**

On March 23, 2012, pro se petitioner Foday Sillah ("Sillah") was sentenced to a term of thirty-seven months in prison after a jury convicted him of bank fraud.  Sillah, represented by a new attorney, appealed arguing that: (1) the evidence was insufficient to support the verdict; (2) this Court's jury instruction regarding reasonable doubt was improper; (3) the sentence imposed by this Court was unreasonable; and (4) trial counsel was ineffective because he did not prepare Sillah to testify or request a fingerprint analysis.  On April 25, 2013, the Second Circuit issued a Summary Order denying Sillah's appeal in all respects, except for the ineffective assistance claim which it ruled should be raised in this Court through a habeas proceeding.

Subsequently, Sillah filed a motion pursuant to section 2255 of Title

28 of the United States Code ("section 2255") seeking to vacate, set aside, or correct his sentence. Sillah alleges that his trial attorney rendered constitutionally ineffective assistance because he did not: (1) move to suppress evidence obtained from an allegedly illegal search of Sillah's home; (2) request a fingerprint analysis on checks the Government presented to the jury; or (3) advise Sillah of the sentencing consequences of a conviction versus those of a plea. For the reasons set forth below, Sillah's motion is denied.

## I.   BACKGROUND

### A.   The Offense Conduct

Sillah took part in a scheme in which he and his co-conspirators would obtain checks payable to legitimate businesses; register businesses with names similar to the intended payees; open bank accounts in the name of these fictitious businesses; deposit the stolen checks into the bank accounts; and withdraw cash from the accounts.[1] At trial, the Government focused on accounts opened by Sillah at TD Bank, Wachovia Bank, and Citizens Bank. The Government also focused on Sillah's attempts to open additional accounts at TD Bank.[2] Among the witnesses the Government called was Amade Souare, a co-

---

[1]   *See* Trial Transcript ("Trial Tr.") at 10, 38, 106-110, 112, 116-121.

[2]   *See id.* at 130-135.

2

conspirator who had entered into a plea agreement.

### 1.    The TD Bank Account

Using the alias "Mamadu Kamara," Sillah opened an account at TD Bank for a fictitious company named "Bollinger General Enterprises" ("Bollinger").[3]  Sillah obtained a trade name certificate for Bollinger.[4]  At TD Bank, Sillah presented a Michigan driver's license with the name "Mamadu Kamara" and the Bollinger certificate, and then made a deposit into the new account.[5]  This transaction was recorded by surveillance cameras.[6]

Sillah then deposited a stolen check made out to "Bollinger Incorporated" in the amount of $75,031.08 into the TD Bank account.[7] Surveillance cameras at another TD Bank branch recorded Sillah as he cashed a check made out to "Mamadu Kamara" for $8,000.[8]  Sillah and Souare cashed two additional checks at a check cashing business, one made payable to "Foday Sillah"

---

[3]    *See id.* at 32-33.

[4]    *See id.* at 116-117.

[5]    *See id.* at 32-36.

[6]    *See id.* at 31.

[7]    *See id.* at 37-38, 87-88.

[8]    *See id.* at 122-123.

in the amount of $20,600 and the other to Souare in the amount of $18,000.[9]  Sillah also deposited a $43,846.48 check payable to "Bollinger Incorporated" into the TD Bank account.[10]  TD Bank halted payment on the check, concluding that it was fraudulently endorsed.[11]

### 2.   The Citizens Bank Account

Sillah opened an account at Citizens Bank under the alias "Moussa Sylla."[12]  The account was registered to another fictitious entity, "Sylla Shipping, SEIU Local 32BJ" ("SEIU").[13]  Sillah deposited a stolen check in the amount of $88,468.62 payable to a legitimate union named "SEIU Local 32BJ."[14]  A co-conspirator informed Sillah and Souare that Citizens Bank suspected that the check was fraudulent.[15]  They subsequently elected not to withdraw the funds from the SEIU account.[16]

---

[9]    *See id.* at 123-125.

[10]   *See id.* at 42-43.

[11]   *See id.* at 44.

[12]   *See id.* at 131-132.

[13]   *See id.* at 133, 156.

[14]   *See id.* at 89-90, 134-137.

[15]   *See id.* at 140-141.

[16]   *See id.*

### 3.     The Wachovia Bank Account

Sillah opened an account at Wachovia Bank using the same name he used in the SEIU transaction.  He deposited a check payable in the amount of $16,604 to the real SEIU.[17]  He also deposited a check for $8,815.86.[18]  In the span of two weeks, Sillah and Souare cashed checks on the account made payable to "Moussa Sylla," "Foday Sillah," and Souare totaling more than $20,000.[19]

### 4.     Additional TD Accounts

Sillah attempted to open another account at TD Bank.  Sillah used a Washington, D.C. license with the name "Moussa Sylla" and a trade name certificate for "Sylla Shipping."[20]  Lissette Miranda, a TD Bank employee, refused to open the account.[21]  Miranda testified that Sillah failed to provide evidence showing that Sylla Shipping had been incorporated.[22]

One month later, Sillah again tried to open an account for Sylla

---

[17]     See *id.* at 70.

[18]     See *id.* at 74.

[19]     See *id.* at 75.

[20]     *See id.* at 130-135.

[21]     *See id*. at 46-47, 55-56.

[22]     *See id*. at 54.

Shipping.[23]  Miranda refused to open the account and notified the branch manager

of the incident.[24]  She also sent copies of Sillah's documents to TD Bank's fraud

investigator.[25]  She testified that several weeks later she observed Sillah at another

TD Bank branch attempting to open an account.[26]

### B.    Procedural History

#### 1.    Sillah's Arrest

Officers arrested Sillah at his home where they recovered two

passports, a New York State driver's license, and other identification documents

under the name "Foday Sillah."[27]  The officers also found a hospital release form in

the name of "Kamrea Mamadu."[28]  Sillah was fingerprinted and signed the

fingerprint card.[29]   On December 28, 2010, the Grand Jury returned an Indictment

charging Sillah with one count of bank fraud in violation of 18 U.S.C. § 1344.[30]

---

[23]     *See id.* at 55-56.

[24]     *See id.* at 55.

[25]     *See id.*

[26]     *See id.* at 56.

[27]     *See id.* at 220-224.

[28]     *See id.* at 222.

[29]     *See id.* at 225-226.

[30]     *See* Indictment filed December 28, 2010.

## 2.   Pre-Trial Plea Allocution

On July 12, 2011, Sillah and his attorney, Sean M. Maher, appeared before this Court. At the outset of the proceeding, Maher and the Assistant United States Attorney, Alvin Bragg, intended to execute a plea agreement.[31]  Maher informed the Court that Sillah intended to plead guilty.[32]  I then questioned Sillah to ensure that the plea was valid.[33]

Among the questions I asked was whether Sillah had discussed the plea with his attorney.[34]  Sillah answered "[y]es."[35]  I also asked Sillah whether he had an opportunity to discuss the consequences of the plea agreement with his attorney, to which Sillah answered he did.[36]  I then informed Sillah of the rights he would be waiving by pleading guilty.[37]  Sillah then stated that he would rather go to trial.[38]  After taking a moment to confer with his attorney, Sillah reaffirmed his

---

[31]   *See* Plea Allocution Transcript ("Plea Tr.") at 2-3, 8.

[32]   *See id.* at 8.

[33]   *See id.* at 9-13.

[34]   *See id.* at 9-10.

[35]   *Id.* at 10.

[36]   *See id*. at 9-10.

[37]   *See id*. at 11-14.

[38]   *See id*. at 14.

wish to go to trial, abandoning the plea.[39]  I then informed Sillah of the sentencing guideline implications of a plea versus a conviction.[40]  Sillah, for a final time, stated his wish to go to trial.[41]

### 3.    Trial

Maher represented Sillah during trial.  He did not call any witnesses in Sillah's defense, but advanced a mistaken identity defense through cross-examination of the Government's witnesses.[42]  He argued that Sillah did not participate in the charged bank fraud.[43]  The jury returned a verdict of guilty.[44]

## C.    The Motion

### 1.    Allegations of Ineffectiveness

Sillah argues that his counsel was ineffective for three reasons.  *First*, he argues that his attorney did not move to suppress evidence from an allegedly

---

[39]    *See id.* at 14.

[40]    *See id.* at 14.

[41]    *See id.* at 17.

[42]    *See, e.g.*, Trial Tr. at 16, 45-47.

[43]    *See, e.g., id.* at 15-16.

[44]    *See id.* at 376.

unlawful search.[45]  Police conducted a search of Sillah's home and obtained his passport, green card, and driver's license.[46]  Sillah alleges that neither the police officers, the prosecutor, nor his attorney ever informed him that this was a warrantless search.[47]  Sillah found out there was no search warrant only after his appellate counsel informed him that there was no warrant and that his wife consented to the search.[48]  Sillah argues that this evidence was used against him at trial and his counsel should have moved to suppress the evidence under the Fourth Amendment.[49]

*Second*, Sillah argues that his attorney was ineffective for failing to conduct fingerprint tests on checks that the Government presented to the jury.[50] Sillah alleges that his attorney told him he would request either a fingerprint or

---

[45]     *See* Petitioner's Section 2255 Motion to Vacate, Set Aside, or Correct Sentence ("Pet. Mot.") at 6-7.

[46]     *See id.* at 8.

[47]     *See id.* at 9.

[48]     *See id.* at 9.

[49]     *See id.* at 11.

[50]     *See id.* at 12.  The initial motion refers to these as "credit cards." Sillah states that the "government had alluded to the jury that [Sillah] was the person who had presented these credit cards to the banks and signed them." *Id.*  In his reply, Sillah states that he had meant checks, rather than credit cards.  *See* Petitioner's Reply Memorandum at 6.  Thus, I interpret Sillah's references to "credit cards" in his initial motion to mean checks.

DNA analysis on the checks.[51]  Sillah alleges that his attorney promised that if a

fingerprint test came back negative, Sillah would "be going home a free man"

following a subsequent motion to dismiss.[52]  Sillah argues that had counsel

investigated the checks, the Government's version of events would have been

contradicted.[53]

       Finally, Sillah alleges that his attorney failed to advise him of the

sentencing consequences of a plea versus those of a conviction.[54]  He argues that

had he known the effect of a plea on his sentence, he would have taken the

Government's plea offer.[55]  He states that this would have led to a lower sentence.[56]

## II.    LEGAL STANDARDS

### A.    Section 2255

       Section 2255 provides as follows:

> A prisoner in custody under sentence of a court established
> by Act of Congress claiming the right to be released upon
> the ground that the sentence was imposed in violation of

---

[51]    *See* Pet. Mot. at 12.

[52]    *Id.*

[53]    *See id.* at 13-14.

[54]    *See id.* at 14.

[55]    *See id.* at 17-18.

[56]    *See id.* at 18.

10

> the Constitution or laws of the United States, or that the
> court was without jurisdiction to impose such sentence, or
> that the sentence was in excess of the maximum authorized
> by law, or is otherwise subject to collateral attack, may
> move the court which imposed the sentence to vacate, set
> aside or correct the sentence.[57]

Relief under section 2255 is available "only for a constitutional error, a lack of

jurisdiction in the sentencing court, or an error of law or fact that constitutes a

fundamental defect which inherently results in [a] complete miscarriage of

justice."[58] Because collateral challenges are in tension with society's strong

interest in the finality of criminal convictions, courts have established rules that

"make it more difficult for a defendant to upset a conviction by collateral, as

opposed to direct, attack."[59]

The Second Circuit has interpreted section 2255 "as requiring a

hearing in cases where the petitioner has made a 'plausible claim' of ineffective

assistance of counsel."[60] The petitioner need only establish that he has a

---

[57]    28 U.S.C. § 2255(a).

[58]    *Graziano v. United States*, 83 F.3d 587, 590 (2d Cir. 1996) (per curiam) (quotation marks and citations omitted).

[59]    *Yick Man Mui v. United States*, 614 F.3d 50, 53 (2d Cir. 2010) (quotation marks and citations omitted).

[60]    *Morales v. United States*, 635 F.3d 39, 45 (2d Cir. 2011) (quoting *Puglisi v. United States*, 586 F.3d 209, 213 (2d Cir. 2009)).

11

"plausible" claim of ineffective assistance of counsel, not that "he will necessarily succeed on the claim."[61] To warrant a hearing, a petitioner's "application must contain assertions of fact that [the] petitioner is in a position to establish by competent evidence."[62] The court must then determine whether, viewing the record "in the light most favorable to the petitioner, the petitioner, who has the burden, may be able to establish at a hearing a *prima facie* case for relief."[63]

However, "[a]iry generalities, conclusory assertions and hearsay statements will not suffice because none of these would be admissible evidence at a hearing."[64] Nor is a court required to presume the credibility of factual assertions "where the assertions are contradicted by the record in the underlying proceeding."[65] Moreover, "'[i]f it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief, the judge must dismiss the motion.'"[66] Depending on the allegations in the

---

[61]    *Armienti v. United States*, 234 F.3d 820, 823 (2d Cir. 2000).

[62]    *United States v. Aiello*, 814 F.2d 109, 113 (2d Cir. 1987).

[63]    *Puglisi*, 586 F.3d at 213.

[64]    *Aiello*, 814 F.2d at 113-14. *Accord Haouari v. United States*, 510 F.3d 350, 354 (2d Cir. 2007).

[65]    *Puglisi*, 586 F.3d at 214.

[66]    *Id.* at 213 (quoting Rule 4(b) of the Rules Governing § 2255 Proceedings for the United States District Courts).

motion, a "court may use methods under [s]ection 2255 to expand the record without conducting a full-blown testimonial hearing."[67]  Potential methods available to a court to supplement the record include "'letters, documentary evidence, and, in an appropriate case, even affidavits.'"[68]

### B.    Ineffective Assistance of Counsel

To establish a claim of ineffective assistance of counsel, a petitioner must show that: (1) his attorney's performance fell below "an objective standard of reasonableness" under "prevailing professional norms" and (2) that he suffered prejudice as a result of that representation.[69]  A court considering a claim of ineffective assistance must apply a "strong presumption" that counsel's representation fell within the "wide range" of reasonable professional assistance.[70] It is the petitioner's burden to show "'that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth

---

[67]    *Chang v. United States*, 250 F.3d 79, 86 (2d Cir. 2001) (citing *Blackledge v. Allison*, 431 U.S. 63, 81 (1977) (stating that courts "may employ a variety of measures in an effort to avoid the need for an evidentiary hearing")).

[68]    *Id.* (quoting *Raines v. United States*, 423 F.2d 526, 529-30 (4th Cir. 1970) (footnote omitted)).

[69]    *Strickland v. Washington*, 466 U.S. 668, 687-88, 693-94 (1984).

[70]    *Id.* at 689.  *Accord Bell v. Cone*, 535 U.S. 685, 697-98 (2002).

Amendment.'"[71]  "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable."[72]  "In assessing the attorney's performance, a reviewing court must judge his conduct on the basis of the facts of the particular case, 'viewed as of the time of counsel's conduct,' and may not use hindsight to second-guess his strategy choices."[73]

Even if an attorney's performance is objectively unreasonable, a petitioner must still prove prejudice.[74]  "It is not enough 'to show that the errors had some conceivable effect on the outcome of the proceeding.'"[75]  "The [petitioner] must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the

---

[71]     *Harrington v. Richter*, 131 S. Ct. 770, 787 (2011) (quoting *Strickland*, 466 U.S. at 687).

[72]     *Strickland*, 466 U.S. at 690.

[73]     *Mayo v. Henderson*, 13 F.3d 528, 533 (2d Cir. 1994) (quoting *Stickland*, 466 U.S. at 690).

[74]     *See Strickland*, 466 U.S. at 687.

[75]     *Harrington*, 131 S. Ct. at 787 (quoting *Strickland*, 466 U.S. at 693). *See Strickland*, 466 U.S. at 693 ("Even if a defendant shows that particular errors of counsel were unreasonable, . . . the defendant must show that they actually had an adverse effect on the defense.").

outcome."[76] As explained by the Supreme Court, the order of analysis of the two

*Strickland* prongs – performance and prejudice – is at the discretion of the court:[77]

> [T]here is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one.   In particular, a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies.  The object of an ineffectiveness claim is not to grade counsel's performance.  If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed.[78]

Thus, if a court finds that there is no prejudice, it need not reach the performance

prong.[79]

### 1.    Plea Offers

A defendant is entitled to the effective assistance of counsel in

connection with plea negotiations because one of the basic duties of a defense

---

[76]    *Strickland*, 466 U.S. at 694.

[77]    *See id.* at 693.

[78]    *Id.* at 697.

[79]    *See Farrington v. Senkowski*, 214 F.3d 237, 242 (2d Cir. 2000) (stating that courts need not resolve the *Strickland* performance prong if the prejudice prong is more readily resolved).

attorney is to advise his client on whether to plead guilty.[80] "As part of this advice, counsel must communicate to the defendant the terms of the plea offer, and should usually inform the defendant of the strengths and weaknesses of the case against him, as well as the alternative sentences to which he will most likely be exposed."[81] To establish a Sixth Amendment violation, a petitioner must establish that his attorney failed to communicate a plea offer or failed to provide objectively reasonable advice about the decision to plead guilty.[82]

In addition to proving that counsel's performance was objectively deficient, a petitioner must also prove that counsel's errors actually prejudiced his case. To prove actual prejudice in plea proceedings, a petitioner must demonstrate "'a reasonable probability, that but for counsel's errors, he would not have pleaded guilty, and would have insisted on going to trial.'"[83] This burden is particularly

---

[80]   *See Lafler v. Cooper*, 132 S. Ct. 1376, 1384 (2012); *Purdy v. United States*, 208 F.3d 41, 44-45 (2d Cir. 2000).

[81]   *Purdy*, 208 F.3d at 45. *Accord Missouri v. Frye*, 132 S. Ct. 1399, 1408 (2012) (stating that "defense counsel has the duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused").

[82]   *See, e.g.*, *Cullen v. United States*, 194 F.3d 401, 403-04 (2d Cir. 1999); *United States v. Gordon*, 156 F.3d 376, 380 (2d Cir. 1998); *Boria v. Keane*, 99 F.3d 492, 496-98 (2d Cir. 1996).

[83]   *Premo v. Moore*, 131 S. Ct. 733, 743 (2011) (quoting *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)).

difficult to meet where a defendant was aware of the "actual sentencing possibilities" and nevertheless decided to plead guilty.[84] The Second Circuit has held that a petitioner's statement that he would have accepted the plea had he been properly advised must be "directly attributable to the habeas petitioner, whether it be through sworn testimony in the main proceeding or by a sworn affidavit in support of the motion."[85]

## III.   DISCUSSION[86]

### A.   Failure to File a Motion to Suppress

Sillah's first argument is that his attorney should have moved to suppress the evidence obtained from his home, which he contends was used against him at trial. This argument fails for two reasons. *First*, his attorney acted

---

[84]   *Ventura v. Meachum*, 957 F.2d 1048, 1058 (2d Cir. 1992). *Accord United States v. Arteca*, 411 F.3d 315, 320 (2d Cir. 2005) (stating that where a defendant's specific claim is that counsel misled him as to the possible sentence which might result from his guilty plea, the issue is whether the defendant was aware of the actual sentencing possibilities and, if not, whether accurate information would have made any difference in his decision to enter a plea).

[85]   *Puglisi*, 586 F.3d at 216-17.

[86]   On December 5, 2013, the Court issued an Order which, among other things, directed Sillah's former counsel to submit an affidavit so that the Government could respond to Sillah's motion. However, for the reasons discussed below, Sillah's motion fails to establish a claim of ineffective assistance of counsel. Accordingly, there is no need for the affidavit from counsel contemplated by the December 5, 2013 Order.

reasonably under the circumstances. *Second*, even if Sillah's attorney acted unreasonably, the evidence obtained from this search did not sufficiently prejudice him.

*Stone v. Powell* prohibits review of a Fourth Amendment violation in a habeas action.[87] But Sillah "brings a 'Sixth Amendment ineffective assistance of counsel claim[ ] which [is] founded primarily on incompetent representation with respect to a Fourth Amendment issue.'"[88]   In order to show that Sillah's attorney failed the performance prong of *Strickland*, Sillah must show that: (1) his attorney had a meritorious motion and (2) he was "'denied a fair trial by the gross incompetence'" of his attorney.[89]

The seized evidence consists of several documents – driver's licenses, a permanent resident alien card, a Social Security card, an employment authorization card, two passports from Gambia in the name of "Foday Sillah," and a hospital release form in the name of "Kamrea Mamadu."[90] *First*, Sillah does not

---

[87]     *See Palacios v. Burge*, 589 F.3d 556, 561 (2d Cir. 2009).

[88]     *Id.* (quoting *Kimmelman v. Morrison*, 477 U.S. 365, 380 (1986)).

[89]     *Id.* (quoting *Kimmelman*, 477 U.S. at 382).

[90]     *See* Trial Tr. at 220-224, 236-237. *See also* Pet. Mot. at 2 (identifying the items seized as his passport, driver's license, permanent residency card, Social Security card, and an employment authorization card).

contest that his name is Foday Sillah. *Second*, there was ample evidence apart from the hospital release form to corroborate Sillah's use of various aliases. This evidence includes identification of Sillah by several witnesses; documents seized from Souare; surveillance photographs; and bank records and photographs.[91] Thus, Sillah cannot show that admission of the hospital form, or the documents in the name of "Foday Sillah," denied him a fair trial.[92]

### B.   Failure to Fingerprint the Checks

Sillah's second argument is that his attorney was ineffective for failing to conduct a fingerprint or DNA analysis on the checks.[93] Sillah's attorney could have reasonably concluded that a fingerprint analysis was unnecessary or harmful to his case. Furthermore, even if a fingerprint test was negative, that would not necessarily have exculpated Sillah. Thus, this claim fails both prongs of the *Strickland* test.

Defense counsel's arguments at trial focused on mistaken identity.[94] Counsel cross-examined the Government's witnesses.[95] For example, he

---

[91]   *See, e.g.*, Trial Tr. at 27-41, 46-47, 54-56, 114-136.

[92]   *See Palacios*, 589 F.3d at 561.

[93]   *See* Pet. Mot. at 12.

[94]   *See* Trial Tr. at 20.

[95]   *See, e.g., id.* at 57-60, 144-153.

questioned Souare regarding his motive to testify, and Miranda as to whether she had identified Sillah in a line-up.[96] If a fingerprint test revealed that Sillah's fingerprints were on the checks, that would have undermined Sillah's defense.[97]

Even if a fingerprint analysis revealed that Sillah's prints could not be identified on the checks, it is still improbable that "the result of the proceeding would have been different."[98] *First*, it is likely that the original checks were destroyed in the ordinary course of business.[99] *Second*, at trial there were several identifications of the defendant, both in court and through surveillance photos.[100] Finally, there was testimony from Souare, Sillah's co-conspirator, establishing Sillah's role in the fraudulent transactions.[101] In the face of this "overwhelming

---

[96]    *See id.* at 58, 147-150.

[97]    *See Thompson v. Burge*, No. 05 Civ. 2914, 2007 WL 2020185, at *13 (E.D.N.Y. July 6, 2007) ("[I]t was not unreasonable for counsel to decide that, rather than ask for a fingerprint test of the gun, his client was in a better position to argue that the failure to fingerprint the gun presented a reasonable doubt precluding petitioner's conviction."). *See also Grisby v. Blodgett*, 130 F.3d 365, 372 (9th Cir. 1997) ("[D]efense counsel made a strategic decision not to pursue this line of evidence because they feared that Grisby's blood would be found.").

[98]    *Strickland*, 466 U.S. at 694.

[99]    *See* Trial Tr. at 70-71, 75.

[100]   *See id.* at 54, 130-135.

[101]   *See id.* at 125.

20

evidence," the failure to conduct a fingerprint analysis did not prejudice Sillah.[102]

### C.   Failure to Inform Regarding the Plea Deal

Sillah contends that his attorney did not inform him of the potential consequences of pleading guilty. That is, had he been informed of the potential reduction in his sentence if he were to plead guilty versus going to trial, he would have pled guilty. However, the record and Sillah's own assertions show that he had been informed of all sentencing consequences.[103]

When asked at the plea allocution hearing whether he discussed the plea with his attorney, Sillah answered that he had.[104] "Such '[s]olemn declarations in open court carry a strong presumption of verity.'"[105] In any event, I advised Sillah as to the potential benefits and drawbacks of pleading guilty, what rights he was forgoing if he were to plead guilty, and that a guilty plea ought only be entered if he committed the crime. Specifically, I explained:

> One difference is that if you plead guilty, then your sentencing

---

[102]   *See Thompson*, 2007 WL 2020185, at *13.

[103]   *See* Plea Tr. at 8, 9, 15-18.

[104]   *See id.* at 8.

[105]   *Echeverry v. United States*, No. 12 Civ. 8411, 2013 WL 5548801, at *8 (S.D.N.Y. Oct. 8, 2012) (quoting *Castillo v. United States*, Nos. 01 Civ. 6671, 99 CR 513, 2006 WL 2621081, at *1 (S.D.N.Y. Sept. 13, 2006) (quoting *Blackledge*, 431 U.S. at 74))).

> guideline range is lower because you will get credit for accepting
> responsibility by pleading guilty. If you are convicted after a trial,
> then the sentencing range is higher because you do not get credit
> for accepting responsibility.[106]

Sillah stated that he understood this explanation.[107]

In sum, Sillah cannot say that had he been informed about the potential reduction in sentence through pleading, he would have pled guilty because he was so informed and still chose to forgo the plea deal.[108] Sillah's ineffective assistance of counsel claim with respect to sentencing consequences is therefore dismissed.

## IV.   CONCLUSION

For the foregoing reasons, Sillah's section 2255 motion is denied in its entirety. The remaining issue is whether to grant a certificate of appealability ("COA"). For a COA to issue, petitioner must make a "substantial showing of the denial of a constitutional right."[109] A "substantial showing" does not require a

---

[106]   Plea Tr. at 15.

[107]   *See id.* at 16.

[108]   *See Ventura v. Meachum*, 957 F.2d 1048, 1058 (2d Cir. 1992) (observing that a district court's explanation of actual sentencing possibilities at a plea allocution may be sufficient to cure any misrepresentation by counsel regarding the defendant's probable sentence). *Accord Echeverry*, 2013 WL 5548801, at *7.

[109]   28 U.S.C. § 2255(h).

22

petitioner to demonstrate that he would prevail on the merits; petitioner must merely show that reasonable jurists could differ as to whether "the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'"[110]  Petitioner made no such showing.  Accordingly, I decline to grant a COA.  The Clerk of the Court is directed to close this case.

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:      New York, New York
            December 17, 2013

---

[110]      *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1983)).  *Accord Middleton v. Attorneys Gen.*, 396 F.3d 207, 209 (2d Cir. 2005) (denying COA where reasonable jurists could not debate whether the district court's dismissal of the petition was correct).

- Appearances -

**Petitioner (Pro Se):**

Foday Sillah
# 63830-054
Moshannon Valley Correctional Center
Unit A-5
555 I Geo Drive
Philipsburg, PA 16866

**Petitioner's Former Counsel:**

Sean M. Maher, Esq.
233 Broadway, Suite 801
New York, NY 10279
(212) 661-5333

**For Respondent:**

James J. Pastore, Jr.
Assistant United States Attorney
1 St. Andrews Plaza
New York, NY 10007
(212) 805-2418

24